IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAULO CRUZ GONZALEZ,

                Plaintiff,

  v.

JACKIE WESTOVER, LINDSAY WALKER,
SUE NOVAK, KARLA SOUZEK,
MICHAEL DITTMAN, KAREN STRESE,
ANNETTE BENDER, JODI HALDEMAN,
and SUSAN SCHMIDTKNECHT,

                Defendants.

OPINION and ORDER

20-cv-635-jdp

---

Pro se plaintiff Paulo Cruz Gonzalez is incarcerated at Columbia Correctional Institution (CCI). He alleges that CCI officials overcharged him for international phone calls, prevented him from communicating with his family, and retaliated against him for complaining about the excess charges. He seeks leave to proceed in forma pauperis, and he has made an initial partial payment of the filing fee as previously directed by the court.

The next step is for me to screen the complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. In doing so, I must accept his allegations as true, *see Bonte v. U.S Bank, N.A.*, 624 F.3d 461, 463 (7th Cir. 2010), and construe the complaint generously, holding it to a less stringent standard than formal pleadings drafted by lawyers. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

I will allow Gonzalez to proceed on claims under the Due Process Clause, First Amendment, and state negligence law. He may be able to state First Amendment retaliation

claims based on being disciplined by prison officials, but only if he identifies the defendants responsible for the events giving rise to those claims. I will stay service of his complaint to give him a chance to submit a supplement that explains which prison officials disciplined him for making complaints.

## ALLEGATIONS OF FACT

I draw the following facts from Gonzalez's complaint, Dkt. 1.

### A. Overcharging for international calls

Gonzalez has family members in Cuba and in Italy. From 2015 to 2019, he was charged between $10 and $15 per 15 minutes to call his relatives abroad. He thought that the rates were unusually high and began to inquire about them in January 2017. Defendant Karen Strese, a social worker, told him that CCI's international phone rate was $5 per 15 minutes.

Over the next two years, Gonzalez sent a variety of letters, request slips, and complaints to the defendants, all prison officials, because he was being charged more for international calls than the rate he was quoted. Gonzalez says that defendants Annette Bender and Jodi Haldeman, both business office staff members, Michael Dittman, then the CCI warden, Luke Weber, the CCI security director, Susan Schmidtknecht, a unit manager, and Strese were involved in overcharging him. They repeatedly gave Gonzalez conflicting information, told him that they weren't responsible for phone billing, and said that CCI didn't set phone rates. He alleges that defendants were part of a scheme to overcharge him for international calls.

### B. Denial of permission to communicate with family in 2017

Under CCI policy, a social worker or unit manager must pre-approve all international calls that inmates place. In June 2017, Gonzalez submitted a request to call his sick and dying

2

mother. Schmidtknecht denied the request. Gonzalez attributes her decision to his inquiries into CCI's international rates. He submitted another request to call his mother in July, which Schmidtknecht also denied. Several days later, she told Gonzalez that he could make one free 15-minute emergency call.

**C. Disciplinary actions**

In September 2017, prison staff issued Gonzalez a conduct report and placed him on temporary lockup status for inquiring about his international charges. He was placed in segregation for 60 days a few weeks later. He does not say which defendants were involved in disciplining him.

**D. Denial of permission to communicate with family in 2018**

Gonzalez was denied permission to contact his family for several months in fall 2018. He asked to call his family in September 2018. Over the next two months, he sent request slips to defendant Sue Novak, who had replaced Dittman as CCI warden, about his excess phone charges and being denied permission to call his family. Gonzalez does not say whether Novak responded to him. Gonzalez then contacted defendants Jackie Westover, a social worker, and Lindsay Walker, a unit manager, to ask for their help. By the time they approved his request, three months had passed since he first asked to call his family. Gonzalez says that they denied his requests to deter his complaints and to silence him.

ANALYSIS

Gonzalez asserts Fourteenth Amendment due process and state-law claims against nine defendants. Because he alleges that he was denied communication with his family and that he

was disciplined for complaining about being overcharged, I will also consider his allegations under the First Amendment.

### A. Due process claims

Gonzalez alleges that each defendant was involved in overcharging him for international calls in violation of his right to due process under the Fourteenth Amendment. The Due Process Clause prohibits states from depriving any person of life, liberty, or property, without due process of law. U.S. Const. Amend. XIV, § 1. To state a § 1983 procedural due process claim, Gonzalez must allege that he (1) had a constitutionally protected property or liberty interest; (2) was deprived of that interest; and (3) was denied due process. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943–44 (7th Cir. 2010).

Gonzalez had a property interest in his prison account funds. *Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986). He says that money was deducted from his account, so he has alleged a deprivation. And he asserts that international calls were supposed to cost $5 dollars per 15 minutes but that he was charged at least double that rate. When he complained about the charges, the prison did not correct the rates or refund him, so Gonzalez sufficiently alleges that he was deprived of his funds without due process.

A plaintiff cannot state a due process claim where the deprivation was "random and unauthorized," a predeprivation hearing was impractical, and a meaningful postdeprivation remedy was available. *Armstrong v. Daily*, 786 F.3d 529, 539 (7th Cir. 2015); *LaBella Winnetka*, 628 F.3d at 944. Gonzalez asserts that multiple prison officials were involved in repeatedly overcharging him for calls, which suggests a consistent practice rather than a random and unauthorized event.

Gonzalez alleges in a line of his complaint that all nine defendants participated in overcharging him. Dkt. 1, ¶ 48. A defendant must have some personal involvement in a plaintiff's constitutional deprivation to be liable under § 1983. *Hildebrandt v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). This means that an official must know about the alleged conduct and facilitate it, approve it, condone it, or turn a blind eye. *Id.* at 1039.

Gonzalez alleges facts that some, but not all, of the defendants were personally involved in overcharging him. He says that Haldeman and Bender deducted funds from his prison account, Dittman dismissed a complaint that he filed, and Strese provided him with conflicting information about phone billing. He also says that he complained to Schmidtknecht about the overcharges. I will grant him leave to proceed on due process claims against those defendants. Gonzalez does not sufficiently allege that the other defendants were involved in overcharging him.

Gonzalez should be aware that although he has alleged facts that are sufficient to state a claim, he will need to gather evidence to support his assertion that defendants intentionally charged him the incorrect rate for his phone calls.

B. **First Amendment free speech claims**

Gonzalez alleges that defendants denied him permission to call his family members for no valid reason. He did not specifically cite the First Amendment in his complaint, but pro se plaintiffs are generally not required to plead legal theories in their complaints. *Small v. Chao*, 398 F.3d 894, 898 (7th Cir. 2005).

Prisoners have a First Amendment right to communicate with others outside prison, but they do not have an unlimited right to telephone use. *See Thornburgh v. Abbott*, 490 U.S. 401, 109 (1989); *Boriboune v. Litscher*, 91 F. App'x 498, 499 (7th Cir. 2003). Under *Turner v. Safley*,

5

482 U.S. 78, 89 (1987), a prisoner's telephone access may be limited as long as the restriction is reasonably related to a legitimate penological interest. *Boriboune*, 91 F. App'x at 499.

The Court of Appeals for the Seventh Circuit has suggested that district courts wait until summary judgment to determine whether there is a reasonable relationship between a restriction and a legitimate penological interest, because an assessment under *Turner* requires a district court to evaluate the state officials' reasons for the restriction. *See e.g., Lindell v. Frank*, 377 F.3d 655, 658 (7th Cir. 2004). Gonzalez alleges that Schmidtknecht, Westover, Walker and Novak each played a role preventing him from contacting his family, which is sufficient at the screening stage, so I will allow him to proceed on First Amendment claims against those defendants.

### C. First Amendment retaliation claims

Gonzalez alleges that he was issued a conduct report, confined him to his cell, and sent to segregation because he complained and asked questions about his international phone charges. He also says that defendants denied him permission to contact his family to silence his complaints. To state a First Amendment retaliation claim, Gonzalez must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a "motivating factor" in defendants' decision to take those actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Prisoner complaints are protected by the First Amendment. *See Hasan v. U.S. Dep't of Labor*, 400 F.3d 1001, 1005 (7th Cir. 2006). Disciplinary segregation, cell confinement, and being prevented from calling family members would likely deter an inmate from engaging in First Amendment activity in the future. Gonzalez alleges that Schmidtknecht, Westover,

6

Walker, and Novak denied him permission to contact his family to deter his complaints, so he has alleged sufficient facts to state retaliation claims against those defendants. But he does not specify which defendants were involved in issuing him a conduct report, placing him on cell confinement, or sending him to segregation. I will give Gonzalez an opportunity to supplement his complaint by identifying the defendants who disciplined him and describing the role that each of them played. I will grant Gonzalez leave to proceed on First Amendment retaliation claims only if Gonzalez alleges that specific prison officials punished him and had a retaliatory motive in doing so.

**D. State-law negligence claims**

Gonzalez contends that defendants were negligent by overcharging him for international calls. Under Wisconsin law, a claim for negligence requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages. *Paul v. Skemp,* 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. For the same reasons I am allowing him to proceed on a due process claim, I will allow Gonzalez to proceed on state-law negligence claims against Haldeman, Bender, Strese, and Dittman.

ORDER

IT IS ORDERED that:

1. Plaintiff Paulo Cruz Gonzalez is GRANTED leave to proceed on the following claims:

    a. Fourteenth Amendment procedural due process claims against Haldeman, Bender, Strese, Dittman, and Schmidtknecht, for overcharging for international phone calls.

    b. First Amendment free speech claims against Schmidtknecht, Novak, Westover, and Walker for denial of calls to family.

7

      c. First Amendment retaliation claims against Schmidtknecht, Novak, Westover, and Walker for denial of calls to family.

      d. State law negligence claims against Haldeman, Bender, Strese, and Dittman for overcharging him for international calls.

2. Gonzalez's remaining claims are DISMISSED for his failure to state a claim upon which relief may be granted. Defendant Souzek is DISMISSED from the case.

3. Gonzalez may have until June 30, 2021, to supplement his complaint by identifying which defendants disciplined him for making complaints and asking questions about being overcharged for phone calls.

4. Service of the complaint is STAYED pending Gonzalez's filing of a supplement to the complaint.

Entered June 9, 2021.

                                              BY THE COURT:

                                              /s/

                                              _____

                                              JAMES D. PETERSON
                                              District Judge