IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAULO CRUZ GONZALEZ,

    Plaintiff,

v.                                                  Case No. 20-CV-0635

JODI HALDEMAN,
ANNETTE BENDER,
KATRINA STRESE,
MICHAEL DITTMANN,
SHARON SCHMIDTKNECHT,

    Defendants.

---

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

---

Paulo Cruz Gonzalez asserts Fourteenth Amendment and Wisconsin law negligence claims against five employees at the Wisconsin Department of Corrections due to the fact that he was allegedly overcharged for international phone calls. However, the undisputable evidence will demonstrate that none of these individuals had any control over the cost of Gonzalez's international calls, and that they acted in accordance with the policies governing payment for those calls. Defendants are entitled to summary judgment.

## STATEMENT OF THE FACTS

Defendants incorporate by reference their proposed findings of fact ("DPFOF") which are being filed contemporaneously with this brief.

I.  Parties

Plaintiff Paulo Gonzalez was an inmate in the custody of the Wisconsin Department of Corrections, housed at Columbia Correctional Institution at times relevant to his claims in this lawsuit. He was transferred to Green Bay Correctional Institution on February 21, 2020 and released on supervision on April 21, 2022. (DPFOF ¶ 1.)

Defendant Jodi Haldeman has been employed by the Wisconsin Department of Corrections as a Senior Financial Specialist at Columbia since June 24, 2018. From November 27, 2016 to June 23, 2018, she was a Financial Specialist and from September 8, 2015 to November 26, 2016, she was a Program Services Office Operations Associate at Columbia. (DPFOF ¶ 2.) Defendant Annette Bender was a Financial Specialist in the Business Office at Columbia Correctional Institution. (DPFOF ¶ 3.) Defendant Katrina Strese was a Social Worker at Columbia Correctional Institution at times relevant to Gonzalez' claims in this lawsuit. (DPFOF ¶ 4.) Defendant Michael Dittmann was a Warden at Columbia Correctional Institution at times relevant to Gonzalez' claims in this lawsuit. (DPFOF ¶ 5.) Defendant Sharon Schmidtknecht was a Unit Manager at Columbia Correctional Institution at times relevant to Gonzalez' claims in this lawsuit. (DPFOF ¶ 6.)

II. The Claims

Plaintiff Paulo Gonzalez Cruz (Gonzalez) was given leave to proceed on: (1) a Fourteenth Amendment procedural due process claim against defendants Jodi Haldeman (Haldeman), Annette Bender (Bender), Katrina Strese (Strese), Michael

2

Dittman (Dittman), and Sharon Schmidknecht (Schmidknecht) based on being overcharged for international phone calls, and (2) a state law negligence claim against Haldeman, Bender, Strese, and Dittman based on being overcharged for international phone calls. These claims asserted took place between 2017 and 2019. (DPFOF ¶ 7.) Gonzalez's claim against Dittman centers around his dismissal of inmate complaint CCI-2017-4759 on May 5, 2017. (DPFOF ¶ 28.)

### III. International Phone Calls at Columbia

When an inmate wanted to make an international phone call, a procedure was followed in order to arrange for the call and ensure that it was paid for. During the relevant time period, the following procedure was used for any inmate making an international call to a family member:

- An inmate would request to make an international call through a Social Worker

- The Social Worker would set a time to assist the inmate with making the international call and completed a DOC-184, Disbursement Request, containing the date and phone number called and entered the amount of $5.00.

- The disbursement would be sent to the Business Office and $5.00 from the inmate's account would be placed on hold until the phone bill was received in order to determine the actual amount of the call.

- Disbursement would be held by the inmate accounts and a photocopy was provided to Accounts Payable to hold on to until the phone bill was received.

3

- Once the phone bill was received, Accounts Payable would provide the call date, actual minutes, and actual cost of the call and provide inmate accounts with this information.

- Inmate accounts would then remove the hold on the $5.00 and process the disbursement for the correct amount of the call. If the amount was less than $5.00, the difference would remain in the inmate's account. If the cost was more than $5.00, it would be processed for the full amount. If the account did not contain enough funds to cover the cost of the international call, the difference would automatically set up as an overdraft and any future monies deposited in his account would be applied toward that overdraft until paid in full.

- The yellow copy of the disbursement form would be sent to the inmate, along with a copy of a trust account statement showing the actual deduction for the call along with the date of the call and the length of the call.

- The original copy was placed in the daily folder in the Business Office.

This process was in place through July 9, 2019, prior to a new inmate phone system going into effect at Columbia. (DPFOF ¶ 8.)

IV. **Gonzalez's International Phone Calls**

Plaintiff Gonzalez regularly communicated with the Business Office regarding his confusion over the charges for his international calls. In 2017, 2018, and 2019, international phone calls were handled by the phone company that Corrections contracted with during those years. That phone company was CenturyLink. (DPFOF

4

¶ 12.) Columbia and Corrections did not set the rates for international calls placed by inmates and were not responsible for the rates that the phone company, CenturyLink, charged. (DPFOF ¶ 13.)

Despite their lack of involvement in setting the rates for international calls, staff consistently tried to provide Gonzalez with the information necessary for him to understand his charges – either by responding to the request with the information requested, or through an intermediary (like a social worker) who had direct contact with an inmate. For example, on March 6, 2016, Gonzalez submitted an Information Request to Business Office Supervisor asking for the price of his international phone call to Italy and Cuba, both of which he claimed were 15 minutes. The business office responded by telling him that international calls vary in price depending on time of day and that he should contact his Social Worker for assistance. At that time, he was provided with the details for two of his calls to Cuba:

> 10/01/2015 at 10:13 a.m. for 17 minutes 24 seconds – the cost was $12.75
>
> 12/09/15 at 9:42 a.m. for 14 minutes 6 seconds – the cost was $14.38

On May 25, 2016, Gonzalez submitted an Information Request to the Business Office Supervisor asking if the Business Office charged him double for any international call before and if so to refund the money. Suzanne Culbertson, who then worked in the Business Office, responded to Gonzalez by telling him that telephone calls are initially charged as the amount indicated on the disbursement. When the Business Office receives the phone bill, the actual cost of the call is calculated, and

5

the initial charge to Gonzalez is corrected to reflect the actual cost, which is then processed. The details appear on his monthly statements. (DPFOF ¶ 10.)

On December 20, 2016 and December 21, 2016, Gonzalez submitted an Information Request to the Business Office Supervisor stating he needed an answer to why he was charged $10.00 for a phone call to Italy from January to December 2015, and then asking "my family use same phone company, I need clear information about my international phone call in general. Thank you. (2015/2016)" Haldeman did not quite understand what he was asking and what he was confused about, and she could not speak with him directly to obtain clarity on the nature of his request. Out of a desire to try to expedite an answer to him, she responded to these requests by telling him to speak to his Social Worker who may be able to assist with his inquiry. Social Workers were often used to help facilitate these kinds of communication requests because of their direct contact with inmates. (DPFOF ¶ 11.)

On January 23, 2017, Gonzalez submitted an Information Request to the Business Office Supervisor stating he had already paid for four international phone calls: one call to Cuba and one call to Italy in November and two calls to Italy in December for a total of $39.42. Haldeman responded to this request by telling him that the above calls were paid in full for a total of $19.42. (DPFOF ¶ 14.)

On January 30, 2017, Gonzalez submitted an Information Request to the Business Office Supervisor stating that he needed to know when the phone company CenturyLink started dealing with Columbia. His request was unclear, and Haldeman understood "deal" to refer to a "discount" of some kind. Thus, she responded to this

6

request by telling him that the charges were based on where he was calling, when he was placing the call (time of day), and the length of the call. Haldeman informed him that the charges are as they appear on the phone bill, and that she was unaware of any "deal" that he was referring to. (DPFOF ¶ 15.)

Because of Gonzalez's confusion regarding the cost for his international phone calls, Strese, Social Worker at Columbia, reached out to John Shanda, Corrections Telecommunications Manager, on January 30, 2017 regarding Gonzalez' concerns regarding the cost of his phone calls to Cuba and Italy. (DPFOF ¶¶ 16, 20.) Mr. Shanda responded to Strese that same day by explaining to her that the basic rates for international calls made from the institutions lines are $1.02 per minute for Cuba and $0.29 per minute for Italy. Mr. Shanda went on to explain that international calls are also increased in cost based on zones within a country, whether the call went to a landline or wireless device and in some cases where the foreign phone company adds to the costs. CenturyLink bills at the rates quoted by Mr. Shanda but has no control over any potential destination add-ons identified above. (DPFOF ¶ 17.)

On February 6, 2017, Gonzalez submitted an Information Request to the Business Office Supervisor stating that on January 27, 2017 he had found out from the Social Worker and the phone company CenturyLink that Columbia had been overcharging him for phone calls made on a landline to his family for the past three years and wanted to know why. Haldeman responded to Gonzalez that Columbia does not do the billing and that he was provided an explanation on the variables of

7

international calling by his Social Worker. Haldeman stated that neither Columbia, nor CenturyLink had any control over destination add on charges. (DPFOF ¶ 18.)

On February 7, 2017, Haldeman sent an email to Strese, Social Worker at Columbia telling her that Gonzalez wrote to the Business Office stating she told him that CenturyLink and Columbia had been overcharging him for phone calls to his family for the past three years. Haldeman asked her to advise if this conversation between her and Gonzalez occurred. (DPFOF ¶ 19.)

Strese responded to Haldeman on February 7, 2017 by telling her that what Gonzalez told the Business Office was false. She said that he had a question on why his two calls to Italy were charged differently so she emailed John Shanda, the Telecommunication Manager to ask why the charges to Italy were different. She printed off Mr. Shanda's paragraph and gave it to him, explaining that charges depend on the region in Italy, different phone number/company, etc. that he was calling. (DPFOF ¶ 20.)

Strese also explained that it is his sister's phone company in Italy that is adding extra fees not Columbia or CenturyLink. She also reminded him that Cuba calls are $1.02 per minute so the next time he called for 15 minutes he will need a disbursement for $15.00. She went on to tell Haldeman that after she and Gonzalez had that conversation, he said he believed her and trusted her. She pointed out that is extremely rare for him to say and so she was not sure what changed his mind again. She advised Haldeman to explain to Gonzalez that different Italy phone numbers will have different fees accessed on their end, not by Columbia. (DPFOF ¶ 21.) On April

8

11, 2017, Haldeman than drafted a memorandum that was sent to Gonzalez which explained that he was going to be charged for all international calls he made, and attached a page of the inmate handbook which referenced the procedure for international calls. (DPFOF ¶ 22-23.)

## V. Gonzalez Stops Being Charged for International Calls

Fortunately for Gonzalez, the date of that memorandum – April 11, 2017 - just happened to coincide with the last date he was ever charged for an international phone call to his family. (DPFOF ¶ 23.) On July 31, 2017, Schmidtknecht, Columbia's Unit Manager, sent the Business Office an email informing them that Warden Dittman's office had determined that Gonzalez would not be charged for any international phone calls he placed and that Gonzalez received a memo indicating the same. (DPFOF ¶ 25.) The phone bill for March 31, 2017 is the last bill from CenturyLink which contains the calls that Paulo Gonzalez was charged for on April 11, 2017. (DPFOF ¶ 26.)

The last time Gonzalez was charged for international phone calls was on April 11, 2017. Gonzalez was not charged for any international phone calls after April 11, 2017 while he was at Columbia which was until February 21, 2020 when he was transferred to Green Bay Correctional Institution. (DPFOF ¶ 27.)

## VI. Notices of Claim

Gonzalez sent two Notices of Claim by first class mail, received by the Wisconsin Department of Justice, pertaining to international call rates. (DPFOF ¶¶ 30-32.)

9

**STANDARD OF REVIEW**

Under Federal Rules of Civil Procedures 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Moreover, more than mere conclusory allegations are required to defeat a motion for summary judgment. *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996). In order for a party "to avoid summary judgment that party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995).

**ARGUMENT**

**I.  Gonzalez's 14th Amendment claim fail as a matter of law.**

The Procedural Due Process Clause prohibits deprivation of a constitutionally protected interest in "life, liberty, or property" without due process of law.... *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). To prove a due process claim, a plaintiff must show two elements: (1) he has a liberty or property interest that the state has interfered with; and (2) the procedures he was afforded upon that deprivation were

constitutionally deficient. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (citing *Ky. Dep't of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). "An essential component of a procedural due process claim is a protected property or liberty interest." *Domka v. Portage County, Wis.*, 523 F.3d 776, 779–80 (7th Cir. 2008).

### A. Gonzalez did not suffer a deprivation of a constitutionally protected property interest.

"A prisoner's liberty interest, and incumbent entitlement to procedural due process protections, generally extends only to freedom from deprivations that 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prisoner life." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995)). In the absence of an "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *Id.*

There is no dispute that Gonzalez had a property interest in his prison account funds. *See Campbell v. Miller,* 787 F.2d 217, 222 (7th Cir. 1986). However, the undisputed facts demonstrate that Gonzalez suffered no deprivation of that interest. The plaintiff was not charged for any international phone calls after April 11, 2017.[1] As such, he cannot demonstrate that he suffered a deprivation of that property interest. Defendants are entitled to summary judgment on that basis.

---

[1] Defendants interpret plaintiff's due process claims to be from 2017 onward based on the screening order in this case. (Dkt. 24.) That screening order noted that the plaintiff began to inquire in January 2017 about his phone charges and that he spent the next two years communicating with these specific defendants, who he asserted violated his rights in the manner in which they addressed his complaints. (Dkt. 24 at 2.)

11

**B. Gonzalez's claims also fail because he was afforded due process.**

In the event that Gonzalez asserts that he continued to suffer a deprivation of that property interest, he had a meaningful post deprivation remedy - the inmate complaint process. Wisconsin provides inmates with an inmate complaint review system, *see* DOC ch. 310, which Gonzalez utilized in this case. Numerous cases have found an institutional grievance process are adequate, post-deprivation state remedies. *See, e.g., Greeno v. Litscher*, 13 F. App'x 370, 376-77 (7th Cir. 2001); *Washington v. Chavez*, No. 12-CV-0282, 2012 WL 1910087, at *3 (E.D. Wis. May 25, 2012); *Polzin v. Huck*, No. 10-CV-1037, 2011 WL 1755541, at *2 (E.D. Wis. May 9, 2011). Gonzalez utilized that process regularly in respect to the claims asserted here and received reasonable responses to his inmate complaints. *See e.g.* DPFOF ¶ 28. As such, Gonzalez's due process claims fail as a matter of law.

**II. Defendants are entitled to summary judgment because Gonzalez cannot demonstrate that they were personally involved in the setting of rates for international calls.**

To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *Sheik–Abdi v. McClellan,* 37 F.3d 1240, 1248 (7th Cir. 1994). This requires demonstrating "a causal link between the defendant's conduct and the plaintiff's injury." *See Shidler v. Moore*, 409 F. Supp. 2d 1060, 1068 (N.D. Ind. 2006). T

Gonzalez will be unable to make that showing. The undisputable facts demonstrate that neither the defendants, nor Columbia, nor the Department of Corrections had any role in setting the rates for international phone calls. Indeed,

the rates that were charged were set in part by CenturyLink, and were also impacted by factors outside of CenturyLink's control, such as add-on costs based on zones within a country, whether the call went to a landline or wireless device and in some cases where the foreign phone company adds to the costs. These defendants cannot be held liable for rates that were outside of their control.

Gonzalez cannot demonstrate that the supervisory defendants – including Unit Manager Schmidtknecht and Dittman - should be held liable under a supervisory liability, either. Indeed, "[t]o succeed on a claim for supervisory liability, a plaintiff must show that the supervisor was personally involved in the constitutional violation." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citing *Matthews v. City of E. St. Louis*, 675 F.3d 703, 707 (7th Cir. 2012)). That means:

> …that the supervisor 'must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he] might see.'" *Id.* (citing *Matthews*, 675 F.3d at 708). "If supervisory liability is predicated on failure to act, the plaintiff must show an 'extremely high degree of culpability.'" *Odogba v. Wis. Dep't of Justice*, 22 F. Supp. 3d 895, 909 (E.D. Wis. 2014) (quoting *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983)). A supervisor's "[f]ailure to control [his subordinates] is not actionable at all 'absent a showing that the official either encouraged the specific incident of misconduct or in some way directly participated in it.'" *Id.* at 909–910 (quoting *Lenard*, 699 F.2d at 885). Supervisors who are "merely negligent" or even grossly negligent, are not liable under Section 1983. *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988).

*Reardon v. Schossow,* 416 F.Supp.3d 793, 807 (E.D. Wis. Sept. 24, 2019).

As previously noted, none of the defendants had any control over the rates charged to Gonzalez. If anything, Schmidtknecht and Dittman helped to resolve the

13

situation with Gonzalez by electing to no longer charge him at all for international calls after April 11, 2017. No reasonably jury would conclude that their involvement in this case constituted the facilitation of unconstitutional conduct. As such, they cannot be held liable under a theory of supervisory liability.

As summarized by the Seventh Circuit in *Burks v. Raemisch*, "[p]ublic officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way." 555 F.3d 592, 595 (7th Cir. 2009). Because none of the defendants were personally involved in the deprivation of his rights, they are entitled to summary judgment.

### III. Gonzalez's claims against Defendant Dittman should be dismissed because he properly responded to his inmate grievances.

Gonzalez's claim against Dittman, in particular, focus on his dismissal of his inmate complaint. However, that claim fails as a matter of law. In *Burks*, the Seventh Circuit rejected a similar claim by an inmate that an institution inmate complaint reviewer rejected his complaint and did not go "beyond the requirements of her job and tr[y] to help him." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009.) As the court in *Burks* stated: "[o]ne can imagine a complaint examiner doing her appointed tasks with deliberate indifference to the risks imposed on prisoners. If, for example, a complaint examiner routinely sent each grievance to the shredder without reading it, that might be a ground of liability. *Id.* at 595 citing *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir.2005) (citations omitted). Or a complaint examiner who intervened to prevent the medical unit from delivering needed care might be thought liable." *Id.* citing *Hernandez v. Keane*, 341 F.3d 137 (2d Cir.2003) (citations omitted).

14

Gonzalez does not make any allegations that Dittman engaged in this type of conduct. Rather, he points to Dittman's dismissal of inmate complaint CCI-2017-4759 in order to justify asserting a due process claim against him. However, the dismissal was based upon the recommendation of the ICE, and that recommendation was imminently reasonable. As such, his claim against Dittman fails.

## IV. Gonzalez's state law claims fail because his notices of claim were defective and the defendants were not negligent.

Plaintiff asserts state law negligence claims against defendants in relation to the same claims. However, the state law claims are barred due to the plaintiff's failure to properly serve a timely and complete notice of claim. Additionally, the claims fail because the defendants were obviously not negligent for the reasons explained above. Finally, if the Court rejects all of these arguments, the Court should at least relinquish supplemental jurisdiction over the state law claims.

### A. Gonzalez's negligence claims are barred because his notices of claim are defective.

Gonzalez served two notices of claim upon the Attorney General as required by state law. However, these notices were defective, as they failed to name the defendants, failed to be served timely, and were not served in a manner in accordance with state law. His state law claims must be dismissed.

Under Wis. Stat. § 893.82, a plaintiff must file a notice of claim with the Wisconsin Attorney General in order to commence an action under state law against a state officer, employee, or agent. The notice of claim must be filed within 120 days of the event causing injury. Wis. Stat. § 893.82 (3). It must include "the names of

15

persons involved, including the name of the state officer, employee or agent involved." *Id.* It must be served either personally on the Attorney General or by certified mail. Wis. Stat. § 893.82 (5). *Sorenson v. Batchelder*, 2016 WI 34, ¶ 36, 368 Wis. 2d 140, 156, 885 N.W.2d 362, 370. "Wisconsin's notice-of-claim statute must be strictly followed." *Davis v. Harding*, 2014 WL4976605 at *29 (W.D. Wis. Oct. 3, 2014). Substantial compliance is insufficient to meet the terms of the statute. *Kellner v. Christian*, 197 Wis. 2d 183, 195, 539 N.W.2d 685 (1995).

Failure to comply with the requirements of Wis. Stat. § 893.82 is fatal to any claim because its requirements are jurisdictional. *Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 116, 595 N.W.2d 392 (1999). "Section 893.82 is not merely a procedural statute that may be waived by the state or its employee[s]. Compliance with sec. 893.82 is necessary to warrant recovery against a state employee." *Tierney v. Lacenski*, 114 Wis. 2d 298, 304 (Wis. Ct. App. 1983) (citing *Mannino v. Davenport*, 99 Wis. 2d 602, 612 (Wis. 1981).

Gonzalez served two notices of claim upon the defendants in relation to the claims asserted in this case. One notice of claim was postmarked March 20, 2019, while the other was postmarked September 16, 2019. Both notices were served more than 120 days after the final date in which Gonzalez was charged for his international phone calls – April 11, 2017. Additionally, neither notice of claim specifically named any of the defendants. Lastly, Gonzalez served his notices of claim by first class mail, rather than certified mail or personal service as required by the statute. Therefore, Gonzalez failed to comply with the requirements of Wis. Stat. § 893.82, and

defendants should be granted summary judgment with respect to his negligence claims.

### B. Gonzalez's negligence claims fail because defendants were not negligent.

"Under Wisconsin law, a claim for negligence 'requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages.'" (Dkt. 28:9) (quoting *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860).

As explained above, the undisputed facts show that none of the defendants had any involvement in the rates charged to Gonzalez. For these reasons, Gonzalez's state law claims should be dismissed on the merits.

### C. This Court should relinquish supplemental jurisdiction over the state law claims.

Alternatively, state defendants submit that this court should relinquish jurisdiction over the state law negligence claims. The general rule is that federal courts relinquish jurisdiction over state law claims if all federal claims are resolved before trials. 28 U.S.C. § 1367(c)(3); *Stinson v. Schueler*, 2021 WL 3722196 (W.D. Wis. Aug. 23, 2021) *citing Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021). Defendants submit that if this Court grants summary judgment in regard to the 14th Amendment claims asserted against them, it should decline to exercise subject matter jurisdiction over Gonzalez's state law claims. Defendants are entitled to qualified immunity.

## V.    Defendants are entitled to qualified immunity.

If the Court does not find in Defendants' favor based on the arguments above, it should nevertheless find they are entitled to qualified immunity because it is not clearly established that Gonzalez's constitutional rights were violated.

### A. Qualified immunity protects all but the plainly incompetent, or those who knowingly violate the law.

Qualified immunity protects government officials from facing suits for damages when their actions do not violate clearly established constitutional or statutory rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Once a defendant asserts a qualified-immunity defense, the plaintiff has the burden to establish that the defendant's action violated a clearly established right. *Estate of Escobedo v. Bender,* 600 F.3d 770, 779 (7th Cir. 2010). "To be clearly established, a right must be sufficiently clear 'that *every* reasonable official would [have understood] that what he is doing violates that right.'" *Reichle v. Howards,* 566 U.S. 658, 132 S. Ct. 2088, 2093 (2012) (alteration in original) (emphasis added) (citation omitted). "This is a high bar." *Kramer v. Pollard*, 497 F. App'x 639, 642 (7th Cir. 2012).

The Supreme Court has emphasized that, "the clearly established law must be 'particularized' to the facts of the case. . . . Otherwise, plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *White v. Pauly*, -- U.S. --, 137 S.Ct. 548, 552 (2017). To defeat a qualified-immunity defense, a plaintiff need not point to a case that is factually identical to the present suit, but "existing precedent must have placed the statutory or constitutional question *beyond debate*."

18

*Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (emphasis added). (internal citations, quotations, and brackets omitted). "In other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White*, 137 S.Ct. at 551 (*quoting Mullenix v. Luna*, --- U.S. --, 136 S.Ct. 305 (2015).)

Courts may decide qualified-immunity cases on the ground that a defendant's action did not violate a clearly established right without reaching the question of whether a constitutional right was violated at all. *See Pearson v. Callahan,* 555 U.S. 223, 236 (2009).

### B. Defendants are entitled to qualified immunity because they did not knowingly violate the law.

If this Court concludes that the charging scheme for international calls violated Gonzalez's constitutional rights, defendants are entitled to qualified immunity because they did not knowingly violate any of his constitutional rights. There is no case precedent which demonstrates that charging an individual for international calls with a rate set by a third-party triggers liability on behalf of staff responsible for implementing the scheme. Additionally, it is debatable as to whether the plaintiff's access to the inmate complaint system constitutes an adequate post-deprivation remedy to scuttle a due process claim.

Plaintiff will be unable to demonstrate precedent which clearly indicates otherwise. As such, defendants are entitled to qualified immunity.

### CONCLUSION

For these reasons, Defendants respectfully request that their motion be granted and this case dismissed with prejudice.

Dated this 14th day of April 2023.

          Respectfully submitted,

          JOSHUA L. KAUL
          Attorney General of Wisconsin

          s/Samir S. Jaber
          SAMIR S. JABER
          Assistant Attorney General
          State Bar #1076522

          Attorneys for Defendants
          Halderman, Bender, Strese, Dittmann,
          Schmidtknecht

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2229
(608) 294-2907 (Fax)
jaberss@doj.state.wi.us